MOUNTAIN STATES MORTGAGE CENTER, INC., Plaintiff-Appellant, v. MICHAEL L. ALLEN et al., Defendants-Appellees (Commercial Credit Loans, Inc., Counterplaintiff-Appellee; Michael L. Allen et al., Counterdefendants-Appellants; Paul B. Javaras, Intervenor-Appellee).

First District (3rd Division)   Nos. 1—91—2629, 1—92—0172 cons.

Opinion filed December 29, 1993.

Jaros, Tittle & O'Toole, of Chicago (James E. Trausch, of counsel), for appellant Mountain States Mortgage Center, Inc.

Law Offices of Lawrence Friedman and Ira T. Nevel, both of Chicago, for appellee Commercial Credit Loans, Inc.

Bashaw & Associates, of Clarendon Hills (Steven B. Bashaw, of counsel), for appellee Paul B. Javaras.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Mountain States Mortgage Center, Inc. (Mountain States), filed an action against defendant, Commercial Credit Loans, Inc. (Commercial Credit), to foreclose on a mortgage executed by defendants Michael L. and Gwendolyn L. Allen. Defendant Commercial Credit filed a counterclaim against plaintiff whereupon it alleged that its lien had priority over plaintiff's mortgage. The parties filed cross-motions for summary judgment on the issue of priority. Both motions were denied. After a trial, an order was entered classifying defendant Commercial Credit as the priority creditor. The trial court also entered a judgment of foreclosure and sale which culminated in the sale of the subject property to Paul B. Javaras as the *bona fide* purchaser for value. Plaintiff moved to stay the sale until after the redemption period. The motion was denied and the trial court entered a confirmation order. Subsequently, plaintiff filed an amended complaint in which it argued that it was the priority creditor pursuant to a different mortgage. Defendant Commercial Credit and Javaras, who intervened, filed a motion to dismiss the amended complaint, which was granted. Plaintiff now appeals the dismissal of its amended complaint and the confirmation order. We affirm.

The issues before this court for review are: (1) whether the publication of notice of the judicial sale of the subject property was improper; (2) whether plaintiff was deprived of its right to pay off the senior lienholder, defendant Commercial Credit; (3) whether the judicial sale is invalid based upon the alleged unfitness of the person who conducted the sale and the impropriety of the location of the sale; (4) whether the confirmation of sale must be affirmed to protect the interest of intervenor Javaras as the *bona fide* purchaser for value; and (5) whether the trial court properly dismissed the amended complaint pursuant to the doctrine of *res judicata* and section 2—613(d) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—613(d)).

On June 8, 1991, plaintiff filed an action against defendant Commercial Credit to foreclose on a mortgage recorded on June 1, 1989, and executed by defendants Michael and Gwendolyn Allen for their residence. Plaintiff also sought to foreclose on a mortgage made

to defendant Commercial Credit, which was recorded on March 28, 1989.

Defendant Commercial Credit filed a counterclaim against plaintiff, wherein it alleged that it had priority over plaintiff's mortgage by virtue of the fact that its mortgage was dated and recorded prior in time to plaintiff's, as a lien upon the subject property. Plaintiff filed an answer to the counterclaim wherein it alleged that its mortgage was the superior lien by virtue of a subordination agreement. Plaintiff attached an unsigned copy of a subordination agreement to its answer.

The parties then filed cross-motions for summary judgment on the issue of priority. Plaintiff alleged in its motion that although the subordination agreement was not signed, it was the understanding between plaintiff and defendant Commercial Credit that defendant Commercial Credit would subordinate its mortgage lien. Both motions for summary judgment were denied on the basis that there was a material issue of fact as to the intentions of the parties with respect to priority and subordination.

On April 4, 1991, the trial court entered an agreed order classifying defendant Commercial Credit as the priority creditor and plaintiff as the junior lienholder. On that same date, the trial court entered an order of default against all of the defendants and a judgment of foreclosure and sale in the sum of $17,089.24 for defendant Commercial Credit. The judgment provided that the redemption expired on July 4, 1991, and thereafter the subject property would be sold by the sheriff of Cook County or the Intercounty Judicial Sales Corporation (Intercounty). The judgment further provided that defendants and all persons claiming under them were forever barred and foreclosed from all rights in equity in and to the subject property. No motion to vacate or modify said judgment was filed.

On May 6, 1991, plaintiff filed an amended complaint to foreclose on an alleged mortgage on the premises dated July 13, 1984, and recorded on July 18, 1984. This action was not filed pursuant to the aforementioned mortgage dated May 24, 1989, and recorded on June 1, 1989.

On June 28, 1991, a notice of sale to be held by Intercounty on July 9, 1991, was filed with the trial court. On the day before the scheduled sale, plaintiff moved to stay the sale alleging that it was improperly scheduled prior to the expiration of the redemption period by virtue of an alleged extension of said period occasioned by the filing of a bankruptcy petition by the mortgagor defendants Allen. This motion was denied.

The subject property was sold to Javaras as the *bona fide*

purchaser for value. On July 15, 1991, the trial court confirmed the report of sale and entered an order granting possession of the subject property to Javaras. On August 12, 1991, plaintiff filed its first notice of appeal relating to the confirmation order.

On August 26, 1991, defendant Commercial Credit and Javaras, an intervenor, filed a joint motion to strike and dismiss plaintiff's first amended complaint based upon the prior judgment and adjudication of the interest of plaintiff as binding and *res judicata.* Following a hearing, the trial court granted the motion to dismiss with prejudice. Plaintiff filed a second notice of appeal from this order on January 2, 1992. Plaintiff now appeals the dismissal of its amended complaint and the confirmation order.

First, plaintiff alleges that the initial notice of the sale of the subject property was published prior to the time allowed by statute, and that said publication was defective because it failed to describe the judgment pursuant to which the sale was made. Javaras and defendant Commercial Credit both contend that we cannot address plaintiff's argument because it was not preserved for appellate review. Specifically, Javaras contends that the above issues were raised for the first time in plaintiff's appellate brief, and defendant Commercial Credit argues that plaintiff is not entitled to appellate review of this issue because the notice of appeal filed by plaintiff in the present case provides only that defendant "appeals the order of July, 1991, confirming the judicial report of sale and requests that the decision be reversed and the sale voided and rescheduled," and that there is no mention of a defective sale publication in the notice of appeal. In the alternative, defendant Commercial Credit argues that the initial sale publication did not occur prior to the time allowed by statute and that it properly described the judgment upon which the sale was made. We agree.

■ Illinois Supreme Court Rule 303(c)(2) (134 Ill. 2d R. 303(c)(2)) requires that a notice of appeal specify the judgment appealed from and the relief sought from the reviewing court. Rule 303(c), however, does not limit the jurisdiction of this court with respect to the present issue. (*Cf. Occidental Chemical Co. v. Agri Profit Systems, Inc.* (1975), 37 Ill. App. 3d 599, 603, 346 N.E.2d 482, 485; *In re Application of the County Treasurer* (1975), 25 Ill. App. 3d 717, 718-19, 323 N.E.2d 803, 805 (An appellate court may decide a case on grounds other than those raised by the parties. The waiver rule is an admonition to parties but it does not limit the jurisdiction of the court).) Rule 366(a) makes the following provisions:

"(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,

exercise all or any of the powers of amendment of the trial court;

\*\*\*

(3) order or permit the record to be amended by correcting errors or by adding matters that should have been included;

\*\*\*

(5) enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the enforcement of a judgment, that the case may require." (134 Ill. 2d Rules 366(a)(1), (a)(3), (a)(5).)

Furthermore, this court has a responsibility to reach a just result in the present case. ( *Occidental Chemical Co.*, 37 Ill. App. 3d at 603, 346 N.E.2d at 485.) On the basis of Supreme Court Rule 366(a) and the aforementioned case law, we will consider the merits of this and all of the other issues and questions raised by plaintiff.

■ We will now turn our attention to the question of whether the notice of the sale of the subject property was published prior to the statutorily allotted time. Plaintiff argues that section 15—1507(c) of the Code does not govern the judicial sale of the subject property because said section was effective only for judicial sales pursuant to foreclosures which were filed after July 1, 1990, and the sale was held prior to the time allowed under the applicable statute. Plaintiff is in error. Section 15—1507 applied to all judicial sales conducted after July 1, 1990.

Section 15—1507(c) of the Code, which enumerates the requirements for the publication of notices for judicial sales, reads as follows:

"(c) Notice of Sale. The mortgagee, or such other party designated by the court, in a foreclosure under this Article shall give public notice of the sale as follows:

(1) The notice of sale shall include at least the following information, but an immaterial error in the information shall not invalidate the legal effect of the notice:

(A) the name, address and telephone number of the person to contact for information regarding the real estate;

(B) the common address and other common description (other than legal description), if any of the real estate;

(C) a legal description of the real estate sufficient to identify it with reasonable certainty;

(D) a description of the improvements on the real estate;

(E) the times specified in the judgment, if any, when the real estate may be inspected prior to sale;

(F) the time and place of the sale;

(G) the terms of the sale;

(H) the case title, case number, and the court in which the foreclosure was filed; and

(I) such other information ordered by the Court.

(2) The notice of sale shall be published at least 3 consecutive calendar weeks (Sunday through Saturday), once in each week, the first such notice to be published not more than 45 days prior to the sale, the last such notice to be published not less than 7 days prior to the sale, by: (i)(A) advertisements in a newspaper circulated to the general public in the county in which the real estate is located, in the section of that newspaper where legal notices are commonly placed and (B) separate advertisements in the section of such a newspaper, which (except in counties with a population in excess of 3,000,000) may be the same newspaper, in which real estate other than real estate being sold as part of legal proceedings is commonly advertised to the general public ***." Ill. Rev. Stat. 1991, ch. 110, pars. 15—1507(c)(1), (c)(2).

In the present case, the initial notice of sale was published on May 28, 1991, 41 days prior to the sale on July 9, 1991. We find that the initial publication of the notice of the sale of the subject property did not occur prior to the time permitted by statute.

In addition, the record shows that said notice mentioned the judgment pursuant to which the sale was made and that it complied with all of the other guidelines listed in section 15—1507(c)(1) of the Code. Accordingly, there was no defect in the notice of sale.

■ Next, plaintiff contends that it was deprived of its right to pay off defendant Commercial Credit's senior lien because the judicial sale was held prior to the expiration of the redemption period by virtue of an extension of said period occasioned by the filing of a petition for bankruptcy by defendants Allen. Defendant Commercial Credit maintains that plaintiff did not have standing to raise the present issue because it did not have a right of redemption during the redemption period. In the alternative, defendant Commercial Credit and Javaras argue that the sale did not occur prior to the expiration of the redemption period and that plaintiff had an opportunity to pay off defendant Commercial Credit.

The record shows that the sale of the subject property was held after the expiration of the redemption period. The April 4, 1992, judgment of foreclosure and order of sale established that the period of redemption would expire on July 5, 1991. The sale was held on July 9, 1991. Plaintiff argues that the redemption period was extended when the judgment of foreclosure and order of sale was amended on July 3, 1991. We disagree. The July 3, 1991, order

amended the previous judgment of foreclosure in that it mandated that plaintiff be compensated for fees and costs associated with modifying the automatic stay triggered by the mortgagor defendants Allen when they filed for bankruptcy. There is no modification of the redemption period in the amended order. Section 15—1603 of the Illinois Mortgage Foreclosure Law (Mortgage Foreclosure Law) expressly prohibits the extension of the redemption period, with certain exceptions which are not applicable to the present case. (Ill. Rev. Stat. 1991, ch. 110, par. 15—1603.) Accordingly, the judicial sale was held in a timely manner with respect to the redemption period.

Moreover, section 15—1603 of the Mortgage Foreclosure Law provides that only an "owner of redemption" has a right to redeem during the redemption period. (Ill. Rev. Stat. 1991, ch. 110, par. 15—1603(a).) An "owner of redemption" is defined as "a mortgagor or other owner or co-owner of the mortgaged real estate." (Ill. Rev. Stat. 1991, ch. 110, par. 15—1212.) Plaintiff is not an owner of redemption within the meaning of the Mortgage Foreclosure Law. We find that as plaintiff has no right to redeem, the timing of the judicial sale with respect to the redemption period does not account for plaintiff's failure to pay off the senior lienholder, defendant Commercial Credit.

■ Next, plaintiff contends that the sale of the subject property to Javaras was invalid because it was not conducted by an officer specifically appointed by or vested with the authority to act for the sheriff and because it was not held at the place specified in the judgment. Defendant Commercial Credit and Javaras maintain that Intercounty, the special sale officer, was properly appointed by the court and that the sale was conducted at an appropriate and proper place according to the notice. We agree.

Section 15—1506(f)(3) of the Mortgage Foreclosure Law provides that the judgment of foreclosure may designate "an official or other person who shall be the officer to conduct the sale other than the one customarily designated by the court." (Ill. Rev. Stat. 1991, ch. 110, par. 15—1506(f)(3).) The statutory provision for foreclosure sales does not mandate that the sheriff of Cook County or any specific deputy conduct the sale in order for it to be confirmed. The judgment of foreclosure entered on April 4, 1991, provided that the sale was to be conducted by either the sheriff of Cook County or Intercounty. The record shows that the sale was conducted by Intercounty. The trial court had jurisdiction over plaintiff at the time of the entry of the judgment and no motion to modify or vacate the judgment was taken by plaintiff, as discussed above. Accordingly, plaintiff cannot now collaterally attack the provision for a sale conducted by Intercounty, on the basis that the sale of the subject property to Javaras was in-

valid because it was not conducted by an officer specifically appointed by, or vested with the authority to act for the sheriff.

Furthermore, we find that the sale was conducted at an appropriate place pursuant to the notice. Section 15—507(c)(1)(F) of the Code provides that a notice of a judicial sale must specify "the time and place of the sale." (Ill. Rev. Stat. 1991, ch. 110, par. 15—1507(c)(1)(F).) The record shows that the notice of sale included the matters set forth in section 15—507(c)(1)(F) and that the sale was conducted at the place specified in the notice. Therefore, we conclude that the special sale officer was properly appointed by the court and that the sale was conducted at an appropriate and proper place according to the notice.

■ Next, defendant Mountain States and Javaras maintain that the trial court properly dismissed plaintiff's amended complaint because the confirmation of sale may not be overturned since Javaras' status as a *bona fide* purchaser for value is entitled to protection pursuant to section 2—1401 of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401). We agree.

There is a strong policy in the State of Illinois favoring judicial sales. *(Uptown Federal Savings & Loan Association v. Vasavid* (1981), 94 Ill. App. 3d 531, 537, 418 N.E.2d 831, 836; *Uptown Federal Savings & Loan Association v. Walsh* (1973), 15 Ill. App. 3d 626, 631, 305 N.E.2d 74, 78.) This policy was encoded in section 2—1401(e) of the Code, which provides as follows:

"§ 2—1401. Relief from Judgments.

\* \* \*

(e) Unless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order or judgment pursuant to the provisions of this section does not affect right, title or interest in or to any real or personal property of any persons, not a party to the original action, acquired for value after the entry of the order or judgment but before the filing of the petition, nor affect any right of any person not a party to the original action under any certificate of sale issued before the filing of the petition, pursuant to a sale based on the order or judgment." Ill. Rev. Stat. 1991, ch. 110, par. 2—1401(e).

Section 5 of the Joint Committee Comments to subsection 2—1401(e) of the Code states that said provision was specifically enacted to protect *bona fide* purchasers of property for value from the effects of an order setting aside a judgment or decree affecting title to said property if the purchaser was not a party to the original proceeding, when there is no affirmative evidence of lack of jurisdiction in the record.

The record shows that Javaras is a *bona fide* purchaser for value of the subject property. As such, Javaras may only be divested of the subject property if it is apparent from the record that the trial court lacked jurisdiction over the parties or the subject matter. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—1401(e); *Janove v. Bacon* (1955), 6 Ill. 2d 245, 249, 128 N.E.2d 706, 708; *Walsh*, 15 Ill. App. 3d at 630-31, 305 N.E.2d at 77-78.) The July 9, 1991, sale of the subject property was conducted pursuant to a judgment wherein the court had both *in personam* and subject matter jurisdiction. There was no apparent jurisdictional defect in the record. Therefore, Javaras, as a *bona fide* purchaser of the subject property, was entitled to rely upon all prior judgments which severed defendants' interest in the subject property. Plaintiff, by seeking to file its amended complaint subsequent to the judgment which established defendant Commercial Credit as the priority creditor and the confirmation of sale, acted in derogation of the interests of Javaras, the third-party *bona fide* purchaser, by reviving an alleged interest previously foreclosed by a prior judgment. Accordingly, the confirmation of sale may not be reversed.

■ Next, defendant Commercial Credit maintains that the trial court's dismissal of plaintiff's amended complaint was proper (1) because the prior judgment of foreclosure in the same proceeding was an adjudication of any claim or interest of plaintiff Mountain States in the subject property, making the amended complaint *res judicata*; and (2) because plaintiff should have pleaded the purported priority of its 1984 mortgage as an affirmative defense in its answer to defendant Commercial Credit's counterclaim filed on July 23, 1990, in order for the court to consider said mortgage in making its decision. We agree.

The purpose of pleadings is to narrow and define the issues to be resolved in a cause of action. To that end, it is necessary that each party include in his pleadings sufficient information to appease the court and his adversary as to the issues he intends to raise at trial. (*Huszagh v. City of Oakbrook Terrace* (1967), 89 Ill. App. 2d 115, 119, 231 N.E.2d 189, 191.) If plaintiff believed that the 1984 mortgage was superior to the 1989 mortgage held by defendant Commercial Credit, it should have pleaded the same as an affirmative defense. Section 2—613(d) of the Code provides as follows:

"§ 2—613. Separate counts and defenses.

\* \* \*

(d) The facts constituting any affirmative defense, \*\*\* and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint, counterclaim, or third-party complaint, in whole or in part, and

any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in answer or reply." (Ill. Rev. Stat. 1991, ch. 110, par. 2—613(d).) The test of whether a defense is affirmative and must be pleaded is "whether the defense gives color to the opposing party's claim and then asserts a new matter by which the apparent right is defeated." (*Condon v. American Telephone & Telegraph Co.* (1991), 210 Ill. App. 3d 701, 709, 569 N.E.2d 518, 523; *Worner Agency, Inc. v. Doyle* (1984), 121 Ill. App. 3d 219, 222, 459 N.E.2d 633, 635.) Under this standard, plaintiff's affirmative defense would have given color to the claim of defendant Commercial Credit by admitting its sufficiency but denying its priority. The alleged superiority of a theretofore unmentioned 1984 mortgage should have been raised as an affirmative defense because the defense impliedly admits the sufficiency of defendant Commercial Credit's 1989 mortgage but offers the 1984 mortgage as the reason for the defeat of its claim. This is the type of "surprise" contemplated by the statute. The failure to raise an affirmative defense constitutes a waiver of that defense. (*First National Bank v. Village of Mundelein* (1988), 166 Ill. App. 3d 83, 90, 519 N.E.2d 476, 481; *Huszagh*, 89 Ill. App. 2d at 120, 231 N.E.2d at 191.) It is uncontradicted that although plaintiff held two mortgages and two notes, there was only one debt. The pleadings in plaintiff's amended complaint indicate that the 1989 mortgage was a revision and a payoff of the 1984 mortgage. Upon reviewing the record and observing the conduct of plaintiff in this cause, it appears that the failure to raise the purported existence of the 1984 mortgage prior to or during the April 4, 1991, trial was an attempt to obtain a proverbial second bite of the apple. Plaintiff apparently relied upon this strategy in the hopes that any interest defendant Commercial Credit obtained would be subordinate to the 1984 mortgage.

Under the circumstances, plaintiff's amended complaint was also *res judicata*. The doctrine of *res judicata* applies to bar the litigation of an action where there is an action with parties, subject matter and causes of action identical to a previous action, and it extends to every matter that was actually determined in the former suit as well as every other matter which might have been raised and determined in it. (*Chicago & Western Indiana R.R. Co. v. Alquist* (1953), 415 Ill. 537, 541, 114 N.E.2d 713, 715; *Boddiker v. McPartlin* (1942), 379 Ill. 567, 576-77, 41 N.E.2d 756, 760-61.) If plaintiff felt aggrieved by the determination of the lien priorities, its proper course would have been to appeal the judgment. The record shows that plaintiff never attempted to have the court vacate or reconsider its earlier finding that defen-

dant was the priority lienholder. Instead, plaintiff used its first amended complaint as a collateral attack on these earlier rulings in an effort to obtain a *de novo* hearing by the trial court on its proposition that all liens are subject to its 1984 mortgage.

For the above reasons, we affirm the trial court's confirmation and its dismissal of the amended complaint.

Affirmed.

TULLY, P.J., and CERDA, J., concur.